V1.6-8

**Faith Lynn Brashear**
Plaintiff /Witness/ Advocate
In RE: 1095 Lowry Ranch Road
Corona, CA 92881
Tel: 951-268-4042
<u>Preferred Response</u>: Fax: 855-204-0859
Faith@Betterquest.com <u>Mail Response</u>:



FILED
CLERK, U.S. DISTRICT COURT
MAR 1 5 2016
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# FEDERAL COURT OF CALIFORNIA
## FOR THE ~~COUNTY~~ OF LOS ANGELES, CENTRAL DISTRICT

FAITH LYNN BRASHEAR, an
individual, Plaintiff

vs.

HSBC BANK USA, NATIONAL
ASSOCIATION, as Trustee of the Holders
of the Deutsche Alt-A Securities, Inc.,
Mortgage Loan Trust, Mortgage Pass-
Through Certificates Series 2007-OA4;
CHARLES G. MEYER JR Director,
HSBC Bank USA, N.A.
THE MORTGAGE LAW FIRM, PLC, as
Trustee and Agent of a Beneficiary; as
agent for Wells Fargo Bank, N.A.;
DARREN J. DEVLIN, President of of The
Mortgage Law Firm, PLC;
SPECIALIZED LOAN SERVICING LLC,
as servicer for HSBC Bank USA, National
Association, as Trustee for the Holders of
the Deutsche Alt-A Securities, Inc.,
Mortgage loan Trust, Mortgage Pass-
Through Certificates Series 2007 –OA4;
MARK MCCLOSKEY Assistant Vice
President of Specialized Loan Servicing
LLC, and All persons and entities claiming
any right to real property located at 1095
Lowry Ranch Road Corona, California
92881 and Does 1-20, inclusively,
Defendants

CASE NO. ED CV16-469- TJH (KKx)

**EXHIBIT N – SEC Foreclosure Audit
Bank of America/MERS assignment of
DOT with known MERS robo- signer -
Doc#2011-0411709; Altered
Corporation Assignment of DOT from
Bank of America to HSBC - Doc#
2012-0129567 – crossing out the word
Mortgage**

**COMPLAINT OF THE PLAINTIFF/ DEBTOR PURSUANT TO 42 U.S.C. Sec 1983**   1

FALSE CLAIMS 31 U.S. Code § 3729 (a) (C), violations of US Constitutional Amendments,
5th, 8th 9th and 14th. Adversary Trial for Summary Judgment, Declaratory and Injunctive relief.



# INDEPENDENT
# FORECLOSURE
# AUDIT

Prepared For:

**DONNA BELTZ**

Property Address:

## 1095 LOWRY RANCH ROAD
## CORONA, CA 92881

Report Date:  December 5, 2012



# PRELIMINARY FINDINGS

☐ No Evidence of a Substitute of Trustee under Deed of Trust

☐ No Evidence of an Assignment of Deed of Trust to Noteholder

☒ **Questionable Legal Standing to Foreclose**

☐ Evidence of Unauthentic Signature(s) and/or Robo-Signor(s)

☐ Evidence of Invalid Document(s)

☐ Improperly Executed Document(s)

☐ Imperfect Chain of Title

☒ **Suspected Imperfect Chain of Endorsements**

☐ Other:



# Introduction

## Original Mortgage Loan Details

| ORIGINAL LENDER | COUNTRYWIDE BANK, FSB |
|---|---|
| BENEFICIARY | MERS, INC. |
| MERS, INC.<br>(*https://www.mers-servicerid.org/sis/search*) | 1001337-0002108190-9 |
| ORIGINAL TRUSTEE UNDER DEED OF TRUST | RECONTRUST COMPANY, NA |
| TITLE COMPANY | FIRST AMERICAN TITLE COMPANY |
| ORIGINAL LOAN AMOUNT | $1,500 ,000 |



# Part I: Securitization Analysis

The analyst first attempts to confirm the sale and securitization of the subject loan. The documents available to the analyst confirmed the name of the Trust to which the subject loan was sold. Furthermore, the unique characteristics of the loan (i.e. loan amount, origination date, zip code, etc) are cross-referenced in a Bloomberg™ database of mortgage and asset backed securities. The search produced the name of the specific Trust to which the loan was ultimately sold. The details of the Trust are provided here:

| | |
|---|---|
| **ISSUING ENTITY**<br>*(name of Trust)* | DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4 |
| **TRUSTEE** | US BANK, NA |
| **SELLER** | DB STRUCTURED PRODUCTS, INC. |
| **DEPOSITOR** | ACE SECURITIES CORP. |
| **CUSTODIAN** | US BANK, NA |
| **MASTER SERVICER** | WELLS FARGO BANK, NA |
| **CUT-OFF DATE** | JUNE 1, 2007 |
| **CLOSING DATE** | JUNE 31, 2007 |

WHO MOVED MY LOAN?

With confirmation of the subject loan in the mortgage pools of DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4, the analyst is now able to trace the history of its sale. The BELTZ loan was <u>sold THREE times</u> from origination through its inclusion into the said TRUST.





The formation of the DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4 was subject to the Pooling and Servicing Agreement ("PSA") dated JUNE 1, 2007 and two Mortgage Loan Purchase Agreements. The Mortgage Loan Purchase Agreements outline the true sales of the BELTZ loan; the first from the ORIGINATOR (COUNTRYWIDE BANK, FSB) to the SELLER (DB STRUCTURED PRODUCTS, INC.) and the second from the SELLER to the DEPOSITOR (ACE SECURITIES CORP.) Subsequently, the PSA will confirm the true sale of the BELTZ loan from the DEPOSITOR to the TRUSTEE of the DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4. (The initial Purchase Agreements between the ORGINATOR and the SELLER was not available to the analyst for review.)

The language found in the PSA (below) confirms the true sale of the BELTZ loan from the DEPOSITOR to the TRUSTEE of the DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4. (Similar language will also be found in the respective Mortgage Loan Purchase Agreement, outlining the true sale of the BELTZ loan from one party to another.) Furthermore, the PSA and Purchase Agreements outline the legal requirements in the sale of the BELTZ note as defined not only by the PSA, but also by CA state law as it relates to negotiable instruments.

*From the Pooling and Servicing Agreement, dated JUNE 1, 2007:*

SECTION 2.01. Conveyance of Trust Fund

The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey to the Trustee, on behalf of the Trust, without recourse, for the benefit of the Certificateholders, all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to the Loans identified on the Loan Schedule, the rights of the Depositor under the Mortgage Loan Purchase Agreement, the Servicing Agreements, the Assignment Agreements, the Subsequent Mortgage Loan Purchase Agreement and such assets as shall from time to time be credited or required by the terms of this Agreement to be credited to the Floor Account, Certificate Swap Account, Class I-A-1B Swap Account, Class A-2A Swap Account, Reserve Fund and Distribution Amount (including, without limitation the right to enforce the obligations of the other parties thereto thereunder), and all other assets included or to be included in REMIC I. Such assignment includes all interest and principal received by the Depositor or the applicable Servicer on or with respect to the Loans (other than payments of principal and interest due on such Loans on or before the Cut-Off Date). The Depositor herewith delivers to the Trustee executed copies of the Mortgage Loan Purchase



Agreement and the Assignment Agreements (with copies of the related Servicing Agreements attached thereto).

In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with the applicable Custodian pursuant to the related Custodial Agreement the documents with respect to each Loan as described under Section 2 of the related Custodial Agreement (the "Loan Documents"). In connection with such delivery and as further described in the related Custodial Agreement, the applicable Custodian will be required to review such Loan Documents and deliver to the Trustee, the Depositor, the Master Servicer and the Seller certifications (in the forms attached to the related Custodial Agreement) with respect to such review with exceptions noted thereon. In addition, the Depositor under the Custodial Agreement will have to cure certain defects with respect to the Loan Documents for the related Loans after the delivery thereof by the Depositor to the Custodians as more particularly set forth therein.

### *From the Mortgage Loan Purchase Agreement, dated June 29, 2007:*

This is a Mortgage Loan Purchase Agreement (this "Agreement"), dated June 29, 2007, between DB Structured Products, Inc. (the "Seller") and ACE Securities Corp., a Delaware corporation (the "Purchaser").

… … …

The Seller intends to sell the Mortgage Loans (as hereinafter identified) to the Purchaser on the terms and subject to the conditions set forth in this Agreement. The Purchaser intends to deposit the Mortgage Loans into a mortgage pool comprising the Trust Fund. The Trust Fund will be evidenced by a single series of mortgage pass-through certificates designated as Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA4 Mortgage Pass-Through Certificates (the "Certificates"). The Certificates will consist of 25 classes of certificates. The Certificates will be issued pursuant to a Pooling and Servicing Agreement, dated as of June 1, 2007 (the "Pooling and Servicing Agreement"), among the Purchaser as depositor, Wells Fargo Bank, N.A. as master servicer (the "Master Servicer") and as securities administrator, HSBC Bank USA, National Association as trustee (the "Trustee") and Clayton Fixed Income Services Inc., as credit risk manager.

WHO
MOVED MY
LOAN?

Agreement and the Assignment Agreements (with copies of the related Servicing Agreements attached thereto).

In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with the applicable Custodian pursuant to the related Custodial Agreement the documents with respect to each Loan as described under Section 2 of the related Custodial Agreement (the "Loan Documents"). In connection with such delivery and as further described in the related Custodial Agreement, the applicable Custodian will be required to review such Loan Documents and deliver to the Trustee, the Depositor, the Master Servicer and the Seller certifications (in the forms attached to the related Custodial Agreement) with respect to such review with exceptions noted thereon. In addition, the Depositor under the Custodial Agreement will have to cure certain defects with respect to the Loan Documents for the related Loans after the delivery thereof by the Depositor to the Custodians as more particularly set forth therein.

### *From the Mortgage Loan Purchase Agreement, dated June 29, 2007:*

This is a Mortgage Loan Purchase Agreement (this "Agreement"), dated June 29, 2007, between DB Structured Products, Inc. (the "Seller") and ACE Securities Corp., a Delaware corporation (the "Purchaser").

… … …

The Seller intends to sell the Mortgage Loans (as hereinafter identified) to the Purchaser on the terms and subject to the conditions set forth in this Agreement. The Purchaser intends to deposit the Mortgage Loans into a mortgage pool comprising the Trust Fund. The Trust Fund will be evidenced by a single series of mortgage pass-through certificates designated as Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA4 Mortgage Pass-Through Certificates (the "Certificates"). The Certificates will consist of 25 classes of certificates. The Certificates will be issued pursuant to a Pooling and Servicing Agreement, dated as of June 1, 2007 (the "Pooling and Servicing Agreement"), among the Purchaser as depositor, Wells Fargo Bank, N.A. as master servicer (the "Master Servicer") and as securities administrator, HSBC Bank USA, National Association as trustee (the "Trustee") and Clayton Fixed Income Services Inc., as credit risk manager.

WHC

(a) Possession of Mortgage Files. The Seller does hereby sell to the Purchaser, without recourse but subject to the terms of this Agreement, all of its right, title and interest in, to and under the Mortgage Loans, including the related Prepayment Charges. The contents of each Mortgage File not delivered to the Purchaser or to any assignee, transferee or designee of the Purchaser on or prior to the Closing Date are and shall be held in trust by the Seller for the benefit of the Purchaser or any assignee, transferee or designee of the Purchaser. Upon the sale of the Mortgage Loans, the ownership of each Mortgage Note, the related Mortgage or with respect to a Cooperative Loan (as defined in Exhibit 3 hereto), the related Security Agreement and the other contents of the related Mortgage File is vested in the Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or that come into the possession of the Seller on or after the Closing Date shall immediately vest in the Purchaser and shall be delivered immediately to the Purchaser or as otherwise directed by the Purchaser.

(b) Delivery of Mortgage Loan Documents. The Seller will, on or prior to the Closing Date, deliver or cause to be delivered to the Purchaser or any assignee, transferee or designee of the Purchaser each of the following documents for each Mortgage Loan:

(i)     with respect to each Mortgage Loan that is not a Cooperative Loan (to the extent not defined herein or in the Pooling and Servicing Agreement, capitalized terms used in this Section 4(b)(i) shall have the meanings set forth on Exhibit 3 to this Agreement):

1.  the original Mortgage Note (including all riders thereto), or certified copies thereof, bearing all intervening endorsements necessary to show a complete chain of endorsements from the original payee, endorsed in blank, via original signature, and, if previously endorsed, signed in the name of the last endorsee by a duly qualified officer of the last endorsee. If the Mortgage Loan was acquired by the last endorsee in a merger, the endorsement must be by "[name of last endorsee], successor by merger to [name of predecessor]". If the Mortgage Loan was acquired or originated by the last endorsee while doing business under another name, the endorsement must be by "[name of last endorsee], formerly known as [previous name]";

We've established that the BELTZ loan was sold three times by means of various purchase contracts as outlined above. With each true sale, certain documents are required under the respective Purchase Contract, the PSA, and state law to consummate the transfer in ownership of the BELTZ loan. So with each true sale of the BELTZ note, the respective seller is required to endorse and deliver to the buyer the BELTZ Note in order to transfer legal ownership of the negotiable instrument. As a result, the proper chains of endorsement should be verifiable on the BELTZ Note, including endorsements from all of the following:

1. COUNTRYWIDE BANK, FSB to DB STRUCTURED PRODUCTS, INC.

2. DB STRUCTURED PRODUCTS, INC. to ACE SECURITIES CORP.

3. ACE SECURITIES CORP. to US BANK, NA AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4

Legal vesting in the BELTZ Note cannot be established and/or confirmed until the current noteholder, US BANK, NA AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4 can legitimately prove the purchase of the note from the DEPOSITOR. In turn, the DEPOSITOR will also have to prove its ownership of the Note prior to its resale. Again, the chain of endorsements on the BELTZ Note will need to be verified to prove the ownership by each respective seller. In other words, without the proper chain of intervening endorsements that conclude with the TRUSTEE in name, the said TRUST (and its certificateholders) may not have acquired the vested interest in the BELTZ Note as claimed. An examination of the BELTZ Note should show THREE endorsements from the respective selling parties as outlined above. Without an established legal vesting in the BELTZ Note, the TRUSTEE will fail to prove its legal standing to foreclose on the BELTZ Loan. The analyst was not provided with a current copy of the Note and thus, is unable to verify the veracity of the endorsement. It is recommended that a current copy of the note be requested via a QWR and made available for review.

If the Note is found to be endorsed "in blank," (no payee is named or designated) then the note becomes a "bearer instrument" by operation of law. In such case, the holder of the note must prove the chain of sales with a delivery and an acceptance receipt for each sale to document the transfer and delivery of the bearer note. Each Mortgage Loan Purchase Agreement and the PSA depict the legal sale of the BELTZ note from one party to another - if the endorsement of the note was left "in blank" in the course of each



sale, then a delivery and acceptance receipt is the only way to prove that each intermediary buyer took possession and claimed to own the "bearer instrument." This also becomes vital when the then-owner of the Note goes to resell the instrument, claiming to be the true owner of the Note. Ultimately, without the receipts US BANK, NA AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4 will fail to prove its legal purchase/ownership of the BELTZ Note and again, will be left without legal standing to foreclose.

Finally, it should be noted that with each sale of the BELTZ Loan, the respective seller of the note made contractual warranties to having good and transferrable title. As mentioned above, this is especially important when the endorsements are left "in blank" because it further reinforces the need to provide the delivery and acceptance receipts. After all, each respective seller cannot make a claim to having good and transferrable title if it cannot prove that it is actually the holder of the "bearer instrument" - nor can a party sell the "bearer instrument" without being the proven bearer of the instrument.  In other words, when the BELTZ loan is sold by the LENDER/ORIGINATOR to the SELLER, the SELLER in turn could not make warranties to having good and transferrable title to the BELTZ loan without receiving the proper endorsements from the ORIGINATOR or by furnishing the acceptance/delivery receipt. The same is true of the DEPOSITOR, who must receive an endorsement from the SELLER or furnish the acceptance/delivery receipt in order to make similar warranties when it sells the BELTZ Loan to the TRUSTEE. Without the verifiable endorsements or receipts, each respective seller of the note has failed to uphold its warranties to having good and transferrable title. As a result, each seller also will have failed to meet the terms of their contract/agreement and could be found in breach. In the opinion of the analyst, each sale of the Note is in question and voidable without verifiable endorsement or delivery/acceptance receipts.

# Part II: Chain of Title & Chronology of Events

| Recording Date | Instrument | From | To |
|---|---|---|---|
| 05/14/2007<br><br>Instrument #<br>319880<br><br>RIVERSIDE County<br>California | **DEED OF TRUST** | DONNA BELTZ | COUNTRYWIDE BANK, FSB |
| 09/16/2011<br><br>Instrument #<br>411709<br><br>RIVERSIDE County<br>California | **ASSIGNMENT OF DEED<br>OF TRUST** | MERS, INC<br>(AS NOMINEE FOR LENDER<br>AND ITS ASSIGNEES) | BANK OF AMERICA, NA |
| 03/20/2012<br><br>Instrument #<br>129567<br><br>RIVERSIDE County<br>California | **ASSIGNMENT OF DEED<br>OF TRUST** | BANK OF AMERICA, NA | HSBC BANK USA, NA AS<br>TRUSTEE FOR THE HOLDERS<br>OF DEUTSCHE ALT-A<br>SECURITIES INC. MORTGAGE<br>LOAN TRUST, MORTGAGE<br>PASS-THROUGH<br>CERTIFICATES SERIES 2007-<br>OA4 |
| 03/20/2012<br><br>Instrument #<br>129568<br><br>RIVERSIDE County<br>California | **NOTICE OF DEFAULT** | RECONTRUST COMPANY,<br>NA | |
| 06/27/2012<br><br>Instrument #<br>297986<br><br>RIVERSIDE County<br>California | **NOTICE OF TRUSTEE'S<br>SALE** | RECONTRUST COMPANY,<br>NA | |



_CHAIN OF TITLE ANALYSIS_

There was no need to execute and record a Substitution of Trustee because the original Trustee as named on the Deed of Trust (Recontrust Company, NA) remained consistent throughout the foreclosure process.

However, HSBC BANK USA, NA should be verified as the "Substitute Trustee" for the DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4. The PSA clearly states that the designated Trustee is US BANK, NA so the proper documentation should be furnished to evidence that HSBC BANK USA, NA was assigned as the Substitute Trustee under the PSA.

## Part III: Signature Analysis

The analyst found nothing of significance.



# CONCLUSIONS

The BELTZ Loan was confirmed to be securitized through the DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4 and found to be sold <u>THREE</u> times from origination through its inclusion into the said TRUST. The formation of the DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4 was subject to the Pooling and Servicing Agreement ("PSA") dated JUNE 1, 2007 and two Mortgage Loan Purchase Agreements. The Mortgage Loan Purchase Agreements outline the true sale of the BELTZ loan from the ORIGINATOR (COUNTRYWIDE BANK, FSB) to the SELLER (DB STRUCTURED PRODUCTS, INC.) and from the SELLER to the DEPOSITOR (ACE SECURITIES CORP.) Subsequently, the PSA will confirm the true sale of the BELTZ loan from the DEPOSITOR to the TRUSTEE of the DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4. (The initial Purchase Agreements between the ORGINATOR and the SELLER was not available to the analyst for review.)

The language found in the PSA confirms the true sale of the BELTZ loan from the DEPOSITOR to the TRUSTEE of the DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4. (Similar language will also be found in the respective Mortgage Loan Purchase Agreement, outlining the true sale of the BELTZ loan from one party to another.) Furthermore, the PSA and Purchase Agreements outline the legal requirements in the sale of the BELTZ note as defined not only by the PSA, but also by CA state law as it relates to negotiable instruments.

We've established that the BELTZ loan was sold three times by means of various purchase contracts as outlined above. With each true sale, certain documents are required under the respective Purchase Contract, the PSA, and state law to consummate the transfer in ownership of the BELTZ loan. So with each true sale of the BELTZ note, the respective seller is required to endorse and deliver to the buyer the BELTZ Note in order to transfer legal ownership of the negotiable instrument. As a result, the proper chains of endorsement should be verifiable on the BELTZ Note, including endorsements from all of the following:

1. COUNTRYWIDE BANK, FSB to DB STRUCTURED PRODUCTS, INC.

2. DB STRUCTURED PRODUCTS, INC. to ACE SECURITIES CORP.

3. ACE SECURITIES CORP. to US BANK, NA AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4



Legal vesting in the BELTZ Note cannot be established and/or confirmed until the current noteholder, US BANK, NA AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4 can legitimately prove the purchase of the note from the DEPOSITOR. In turn, the DEPOSITOR will also have to prove its ownership of the Note prior to its resale. Again, the chain of endorsements on the BELTZ Note will need to be verified to prove the ownership by each respective seller. In other words, without the proper chain of intervening endorsements that conclude with the TRUSTEE in name, the said TRUST (and its certificateholders) may not have acquired the vested interest in the BELTZ Note as claimed. <u>An examination of the BELTZ Note should show THREE endorsements from the respective selling parties as outlined above. Without an established legal vesting in the BELTZ Note, the TRUSTEE will fail to prove its legal standing to foreclose on the BELTZ Loan</u>. The analyst was not provided with a current copy of the Note and thus, is unable to verify the veracity of the endorsement. It is recommended that a current copy of the note be requested via a QWR and made available for review.

If the Note is found to be endorsed "in blank," (no payee is named or designated) then the note becomes a "bearer instrument" by operation of law.  In such case, the holder of the note must prove the chain of sales with a delivery and an acceptance receipt for <u>each sale</u> to document the transfer and delivery of the bearer note. Each Mortgage Loan Purchase Agreement and the PSA depict the legal sale of the BELTZ note from one party to another - if the endorsement of the note was left "in blank" in the course of each sale, then a delivery and acceptance receipt is the only way to prove that each intermediary buyer took possession and claimed to own the "bearer instrument." This also becomes vital when the then-owner of the Note goes to resell the instrument, claiming to be the true owner of the Note. Ultimately, without the receipts US BANK, NA AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST 2007-OA4 will fail to prove its legal purchase/ownership of the BELTZ Note and again, will be left without legal standing to foreclose.

It should also be noted that with each sale of the BELTZ Loan, the respective seller of the note made contractual warranties to having good and transferrable title. As mentioned above, this is especially important when the endorsements are left "in blank" because it further reinforces the need to provide the delivery and acceptance receipts. After all, each respective seller cannot make a claim to having good and transferrable title if it cannot prove that it is actually the holder of the "bearer instrument" - nor can a party sell the "bearer instrument" without being the proven bearer of the instrument.  In other words, when the BELTZ loan is sold by the LENDER/ORIGINATOR to the SELLER, the SELLER in turn



could not make warranties to having good and transferrable title to the BELTZ loan without receiving the proper endorsements from the ORIGINATOR or by furnishing the acceptance/delivery receipt. The same is true of the DEPOSITOR, who must receive an endorsement from the SELLER or furnish the acceptance/delivery receipt in order to make similar warranties when it sells the BELTZ Loan to the TRUSTEE. Without the verifiable endorsements or receipts, each respective seller of the note has failed to uphold its warranties to having good and transferrable title. As a result, each seller also will have failed to meet the terms of their contract/agreement and could be found in breach. In the opinion of the analyst, each sale of the Note is in question and voidable without verifiable endorsement or delivery/acceptance receipts.

## END OF INDEPENDENT FORECLOSURE AUDIT



# EXHIBIT A





## Voluntary Lien Search

### Transaction Details for
### 1095 LOWRY RANCH RD, CORONA CA 92881
### APN: 116-290-047

**History Record #: 1**
*Foreclosure:*

| | |
|---|---|
| Recording Date: **06/27/2012** | Filing Date: **06/25/2012** |
| Document Number: **297986** | Orig Recording Date: **05/14/2007** |
| Document Type: **NOTICE OF TRUSTEE'S SALE** | Orig Doc Number: **319880** |
| Trustee: **RECONTRUST CO NA** | Trustee Phone: **(800)281-8219** |
| Title Company: **Landsafe Title** | Unpaid Balance: **$1,934,479** |
| Defendant: **BELTZ DONNA** | |

**History Record #: 2**
*Foreclosure:*

| | |
|---|---|
| Recording Date: **03/20/2012** | Filing Date: **03/17/2012** |
| Document Number: **129568** | Orig Recording Date: **05/14/2007** |
| Document Type: **NOTICE OF DEFAULT** | Orig Doc Number: **319880** |
| Trustee: **RECONTRUST CO NA** | Trustee Phone: |
| Title Company: **Landsafe Title** | Unpaid Balance: |
| Defendant: **BELTZ DONNA** | |

**History Record #: 3**
*Assignment:*

| | |
|---|---|
| Recording Date: **03/20/2012** | Orig Recording Date: **05/14/2007** |
| Document Number: **129567** | Orig Doc Number: **319880** |
| Document Type: **ASSIGNMENT OF MORTGAGE** | |
| New Lender: **\* OTHER INSTITUTIONAL LENDERS** | |
| Previous Lender: **BANK OF AMERICA** | |
| Borrower: **BELTZ DONNA** | |

**History Record #: 4**
*Assignment:*

| | |
|---|---|
| Recording Date: **09/16/2011** | Orig Recording Date: **05/14/2007** |
| Document Number: **411709** | Orig Doc Number: **319880** |
| Document Type: **ASSIGNMENT OF MORTGAGE** | |
| New Lender: **BANK OF AMERICA** | |
| Previous Lender: **MORTGAGE ELECTRONIC REGISTRATI** | |
| Borrower: **BELTZ DONNA** | |

**History Record #: 5**
*Finance:*

| | |
|---|---|
| Recording Date: **09/11/2007** | Finance Type: **REFINANCE** |
| Document Number: **575587** | Mortgage Loan Type: **CONVENTIONAL** |
| Document Type: **EQUITY OR CREDIT LINE** | Mortgage Term: **20 YEARS** |
| Lender: **INDYMAC BK FSB** | Mortgage Rate Type: |
| Loan Amount: **$250,000** | Mortgage Rate: |
| Borrower: **BELTZ DONNA** | |

**History Record #: 6**
*Release:*

| | |
|---|---|
| Recording Date: **05/31/2007** | Orig Recording Date: **03/06/2006** |
| Document Number: **359689** | Orig Doc Number: **158851** |
| Document Type: **DEED OF RELEASE** | |

**History Record #: 7**
*Release:*

    Recording Date: **05/24/2007**
    Document Number: **342206**
    Document Type: **DEED OF RELEASE**

    Orig Recording Date: **03/06/2006**
    Orig Doc Number: **158850**

**History Record #: 8**
*Sale/Transfer:*

    Recording Date: **05/14/2007**
    Document Number: **319879**
    Document Type: **INTERSPOUSAL DEED TRANSFER**
    Title Company: **FIRST AMERICAN TITLE**
    Buyer: **BELTZ DONNA**
    Seller: **BELTZ VINCENT W**

    Sale Date: **05/08/2007**
    Sale Price:
    Sale Type: **PARTIAL**

**History Record #: 9**
*Sale/Transfer:*

    Recording Date: **05/14/2007**
    Document Number: **319878**
    Document Type: **GRANT DEED**
    Title Company: **FIRST AMERICAN TITLE**
    Buyer: **BELTZ DONNA**
    Seller: **BELTZ DONNA M**

    Sale Date: **05/03/2007**
    Sale Price:
    Sale Type: **PARTIAL**

*Finance:*

    Recording Date: **05/14/2007**
    Document Number: **319880**
    Document Type: **DEED OF TRUST**
    Lender: **COUNTRYWIDE BK FSB**
    Loan Amount: **$1,500,000**
    Borrower: **BELTZ DONNA**

    Finance Type: **NOMINAL**
    Mortgage Loan Type: **CONVENTIONAL**
    Mortgage Term: **30 YEARS**
    Mortgage Rate Type: **ADJUSTABLE**
    Mortgage Rate: **8.375**

**History Record #: 10**
*Sale/Transfer:*

    Recording Date: **03/06/2006**
    Document Number: **158849**
    Document Type: **INTERSPOUSAL DEED TRANSFER**
    Title Company: **FIDELITY NATIONAL TITLE CO**
    Buyer: **BELTZ DONNA M**
    Seller: **BELTZ VINCENT W**

    Sale Date: **02/20/2006**
    Sale Price:
    Sale Type: **PARTIAL**

**History Record #: 11**
*Sale/Transfer:*

    Recording Date: **03/06/2006**
    Document Number: **158848**
    Document Type: **GRANT DEED**
    Title Company: **FIDELITY NATIONAL TITLE CO**
    Buyer: **BELTZ DONNA M**
    Seller: **CROWN RANCH ESTATES LLC**

    Sale Date: **02/23/2006**
    Sale Price: **$1,502,000**
    Sale Type: **FULL**

*Finance:*

    Recording Date: **03/06/2006**
    Document Number: **158850**
    Document Type: **DEED OF TRUST**
    Lender: **COUNTRYWIDE BK**
    Loan Amount: **$1,000,000**
    Borrower: **BELTZ DONNA M**

    Finance Type: **1ST TIME SALE**
    Mortgage Loan Type: **CONVENTIONAL**
    Mortgage Term: **30 YEARS**
    Mortgage Rate Type: **ADJUSTABLE**
    Mortgage Rate: **6.875**

*Finance:*

    Recording Date: **03/06/2006**
    Document Number: **158851**
    Document Type: **DEED OF TRUST**

    Finance Type: **1ST TIME SALE**
    Mortgage Loan Type: **CONVENTIONAL**
    Mortgage Term:

Lender: **COUNTRYWIDE BK**
Loan Amount: **$350,000**
Borrower: **BELTZ DONNA M**

Mortgage Rate Type: **ADJUSTABLE**
Mortgage Rate:

### Voluntary Lien Date Ranges for RIVERSIDE , CA

|            | Sales      | Mortgages  | Assignments | Releases   | Foreclosures |
|------------|------------|------------|-------------|------------|--------------|
| Start Date | 10/01/1981 | 10/01/1981 | 01/02/2004  | 01/10/2005 | 01/02/2002   |
| End Date   | 11/21/2012 | 11/20/2012 | 11/21/2012  | 11/21/2012 | 11/21/2012   |

Recording Requested By
First American Title Company
Riverside Resale

Recording Requested By:
T. DUFFY



DOC # 2007-0319830
05/14/2007 08:00A Fee:75.00
Page 1 of 23
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
AL ACUNA

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |

[Space Above]

2698776
[Escrow/Closing #]

00016536826405007
[Doc ID #]

T
013

## DEED OF TRUST

MIN 1001337-0002108190-9

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated MAY 02, 2007 , together with all Riders to this document.

**(B) "Borrower"** is

DONNA BELTZ, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16



-6A(CA) (0207)   CHL (08/05)(d)   VMP Mortgage Solutions, Inc. (800)521-7291
CONV/VA

Form 3005  1/01

* 2 3 9 9 1 *

* 1 6 5 3 6 8 2 6 4 0 0 0 0 0 1 0 0 6 A *

DOC ID #: 00016536826405007

Borrower's address is
1095 LOWRY RANCH ROAD, CORONA, CA 92882
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
Countrywide Bank, FSB.
Lender is a FED SVGS BANK
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
(D) "Trustee" is
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated MAY 02, 2007          . The Note states that Borrower owes Lender
ONE MILLION FIVE HUNDRED THOUSAND and 00/100

Dollars (U.S. $ 1,500,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JUNE 01, 2037          .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

DOC ID #: 00016536826405007

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
          COUNTY                      of                    RIVERSIDE                    :
  [Type of Recording Jurisdiction]                   [Name of Recording Jurisdiction]

lot 47 of tarct 29617, in the city of corona, as shown by map on file in book 365 pages 84 through 95, inclusive of maps, in the office of the county recorder of riverside county, california.

*See attached exhibit "A" for complete legal description*

Parcel ID Number: 1162900476                                   which currently has the address of
                     1095 LOWRY RANCH ROAD, CORONA
                                                      [Street/City]
California         92881                ("Property Address"):
                   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

DOC ID #: 00016536826405007

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #: 00016536826405007

   **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.
   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.
   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.
   If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.
   Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DOC ID #: 00016536826405007

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #: 00016536826405007

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: 00016536826405007

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

DOC ID #: 00016536826405007

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID #: 00016536826405007

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID #: 00016536826405007

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC ID #: 00016536826405007

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
DANIEL BELTZ                                          -Borrower

_____ (Seal)
                                                     -Borrower

_____ (Seal)
                                                     -Borrower

_____ (Seal)
                                                     -Borrower

DOC ID #: 00016536826405007

State of California
County of Riverside                                    } ss.

On MAY 03 2007 before me, Tammy Evans
notary public _____ personally appeared

Donna Beltz _____

_____

_____

_____

_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

TAMMY EVANS
Commission # 1497098
Notary Public - California
Riverside County
My Comm. Expires Jun 27, 2008

# ADJUSTABLE RATE RIDER
### (PayOption MTA Twelve Month Average Index - Payment Caps)

|  |  |
|---|---|
| 2698776 | 00016536826405007 |
| [Escrow/Closing #] | [Doc ID #] |

THIS ADJUSTABLE RATE RIDER is made this  SECOND                  day of
MAY, 2007              , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
Countrywide Bank, FSB.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

1095 LOWRY RANCH ROAD
CORONA, CA 92882
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**PayOption MTA ARM Rider**
**1E310-XX (09/05)(d)**                    Page 1 of 6





DOC ID #: 0001653682640

## 2. INTEREST

### (A)  Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of       8.375 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of       1.000 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3.  The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first                day of JULY, 2007                , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding                THREE & 40/100 percentage point(s) (     3.400 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than       9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

**PayOption MTA ARM Rider**
**1E310-XX (09/05)**                    Page 2 of 6

DOC ID #: 0001653 6826405007

I will make my monthly payments on the FIRST                    day of each month
beginning on July, 2007                        . I will make these payments every month until I have
paid all the Principal and interest and any other charges described below that I may owe under the
Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on JUNE 01, 2037              , I still owe amounts under the Note, I will pay
those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of
U.S. $ 4,824.59                       , unless adjusted under Section 3 (F).

### (C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the
first                    day of JULY, 2008                    , and on that day every 12th
month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also
will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment
which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If
the Minimum Payment is not sufficient to cover the amount of the interest due then negative
amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment
Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of
the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe
at the Payment Change Date in full on the maturity date in substantially equal payments at the interest
rate effective during the month preceding the Payment Change Date. The result of this calculation is
called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment
effective on a Payment Change Date, will not increase by more than 7.500% of my prior
monthly payment. This   7.500% limitation is called the "Payment Cap." This Payment Cap
applies only to the Principal and interest payment and does not apply to any escrow payments Lender
may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the
amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying
it by the number   1.075 . The result of this calculation is called the "Limited Payment." Unless
Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be
the lesser of the Limited Payment and the Full Payment.

DOC ID #: 0001653682640 5007

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the tenth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

DOC ID #: 0001653682640 5007

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

DOC ID #: 00016536826405007

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  -Borrower
DONNA BELTZ

_____  -Borrower

_____  -Borrower

_____  -Borrower

● PayOption MTA ARM Rider
1E310-XX (09/05)                        Page 6 of 6

Title Order Number:

File Number:          RRI-2698776

## Exhibit "A"

Real property in the City of Corona, County of Riverside, State of California, described as follows:

PARCEL 1:

LOT 47 OF TRACT NO. 29617, IN THE CITY OF CORONA, AS SHOWN BY MAP ON FILE IN BOOK 365 PAGES 84 THROUGH 95, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, CALIFORNIA.

EXCEPTING THEREFROM ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, AND MINERALS OF EVERY KIND ON, IN AND UNDER THAT MAYBE PRODUCED FROM SAID PROPERTY; AND PROVIDED, HOWEVER, SUCH RIGHTS SHALL NOT BE EXERCISED WITHIN 500 FEET OF THE SURFACE OF SAID LAND AND THERE SHALL BE NO SURFACE ENTRY AS RESERVED IN A DEED RECORDED SEPTEMBER 16, 1977 AS INSTRUMENT NO. 181966, OF OFFICIAL RECORDS.

RESERVING FROM SAID LAND, FOR THE BENEFIT OF GRANTOR, ITS SUCCESSORS IN INTEREST, AND OTHERS, EASEMENTS FOR ACCESS, USE, ENJOYMENT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THAT CERTAIN DECLARATION OF ESTABLISHMENT OF CONDITIONS, COVENANTS AND RESTRICTIONS FOR CROWN RANCH ESTATES, RECORDED OCTOBER 21, 2004, AS INSTRUMENT NO. 04-834126, OF OFFICIAL RECORDS, INCLUDING ALL AMENDMENTS AND/OR ANNEXATIONS THERETO ("DECLARATION").

PARCEL 2:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE DECLARATION.

APN: 116-290-047-6

**DOC # 2011-0411709**
09/16/2011 09:37 AM Fees: $21.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Recording Requested By:
**Bank of America**
Prepared By: **Mary Ann Hierman**
**450 E. Boundary St.**
**Chapin, SC 29036**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

**\*\*This document was electronically submitted
to the County of Riverside for recording\*\***
Receipted by: MABRERA

DocID#    **10316536826429752**
Property Address:
**1095 Lowry Ranch Rd**
**Corona, CA 92881-4736**
CA0-ADT  14519915          9/2/2011

*This space for Recorder's use*

MIN #: 1001337-0002108190-9        MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP FKA COUNTRYWIDE HOME LOANS SERVICING LP** whose address is **9062 OLD ANNAPOLIS RD, COLUMBIA, MD 21045** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:            **COUNTRYWIDE BANK, FSB**
Original Borrower(s):       **DONNA BELTZ, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**
Original Trustee:           **RECONTRUST COMPANY, N.A**
Date of Deed of Trust:      **5/2/2007**
Original Loan Amount:       **$1,500,000.00**

Recorded in **Riverside County,CA** on: **5/14/2007**, book N/A, page N/A and instrument number **2007-0319880**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

9/2/11

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____

**Miguel Romero, Vice President**

DOC # 2011-0411709
Page 2 of 2  09/16/2011 09:37 AM

State of **California**
County of **Ventura**

On ___9-7-11___ before me, __*Victoria Cook*__, Notary Public, personally appeared
**Miguel Romero**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____          **(Seal)**
My Commission Expires: _____

VICTORIA COOK
Commission # 1801310
Notary Public - California
Ventura County
My Comm. Expires Jun 28, 2012

*attached: A000T*

, LANDSAFE TITLE

RECORDING REQUESTED BY:

RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT**

AND TAX STATEMENTS TO:

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063

DOC # 2012-0129567
03/20/2012 03:57P Fee:18.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



TS No. 12-0021468

12-0035515

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM 030 |
| | | | | | T: | | CTY | UNI | |

## CORPORATION ASSIGNMENT OF DEED OF TRUST/~~MORTGAGE~~

18

T 030

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF THE DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA4**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 05/02/2007, EXECUTED BY: DONNA BELTZ, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, TRUSTOR: TO RECONTRUST COMPANY, N.A., TRUSTEE AND RECORDED AS INSTRUMENT NO. 2007-0319880 ON 05/14/2007, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF RIVERSIDE COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED:   MAR 1 9 2012

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP

BY:                                    MAR 1 9 2012

LORYN STONE, ASSISTANT VICE PRESIDENT

State of:   California                    )
County of:  Ventura                      )
On MAR 1 9 2012 before me, _____, notary public, personally appeared _____ Loryn Stone
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by

KENNY VILLAVICENCIO

LANDSAFE TITLE

DOC # 2012-0129568
03/20/2012 03:57P Fee:27.00
Page 1 of 4
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

RECONTRUST COMPANY

1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn:  Michael Munoz

TS No. 12-0021468

Title Order No. 12-0035515

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
| l | | | 4 | | l | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM 030 |
| | | | | | | T: | | CTY | UNI |

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

## IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is  **$362,047.61,** as of 03/17/2012 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens,

TS No. 12-0021468

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF THE DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA4
C/O Bank of America, N.A.
400 National Way
SIMI VALLEY, CA  93065
FORECLOSURE DEPARTMENT (800) 669-6650

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

## YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 05/02/2007, executed by DONNA BELTZ, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 05/14/2007, as Instrument No. 2007-0319880 (or Book , Page ) of Official Records in the Office of the County Recorder of Riverside County, California.
Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 1,500,000.00.
That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :  FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL AND INTEREST  WHICH BECAME DUE ON 06/01/2008  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND

TS No. `12-0021468

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: March 17, 2012

RECONTRUST COMPANY, N.A., as agent for the Beneficiary

MAR 1 9 2012

**IRMA GARAY**
Assistant Vice President

**Bank of America**
Home Loans

Notice Date:   March 8, 2012

| 12-0021468 |

Donna Beltz
Pmb 154
19589 7th Ave NE
Poulsbo, WA  98370

**Property Address:**
1095 Lowry Ranch Road
Corona, CA  92881

## CALIFORNIA DECLARATION

I, _David A. Distant_, Mortgage Servicing Specialist I of Bank of America, N.A.,
declare under penalty of perjury, under the laws of the State of California, that the
following is true and correct:

Bank of America

☐ has contacted the borrower to assess the borrower's financial situation and explore
options for the borrower to avoid foreclosure,

☒ tried with due diligence to contact the borrower in accordance with California Civil
Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an
organization, person, or entity whose primary business is advising people who have
decided to leave their homes on how to extend the foreclosure process and to avoid
their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not
been finalized to wit, there is no order on the court's docket closing or dismissing the
bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because State Reason.

_03/08/12_      _Cottonwle N.V._

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

TS No. 12-0021468
Title Order No. 12-0035515

APN No. 116-290-047-6

DOC # 2012-0297986
06/27/2012 03:07P Fee:21.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|----|------|------|-----|------|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM 043 |
| | | | | | | T: | CTY | UNI | |

**NOTICE OF TRUSTEE'S SALE**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 05/02/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

T 043

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by DONNA BELTZ, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, dated 05/02/2007 and recorded 05/14/2007, as Instrument No. 2007-0319880, in Book , Page of Official Records in the office of the County Recorder of RIVERSIDE County, State of California, will sell on 07/20/2012 at 09:00 AM, In front of the Corona Civic Center, 849 W. Sixth Street, Corona, CA 92882 at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 1095 LOWRY RANCH ROAD, CORONA, CA 92881. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $1,934,479.36. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

**NOTICE TO POTENTIAL BIDDERS**

TS No. 12-0021468
APN No. 116-290-047-6

## NOTICE TO PROPERTY OWNER

The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 1-800-281-8219 or visit this Internet Web site www.recontrustco.com, using the file number assigned to this case 12-0021468. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063
Phone/Sale Information: (800) 281-8219

JUN 2 5 2012

By: _____
    Sesilia Garcia, Asst Vice President

RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.